UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

RAYMOND DAHMS,

    Plaintiff,

  v.                                 Case No. 20-CV-1052

KILOLO KIJAKAZI,
Acting Commissioner of Social Security[1],

    Defendant.

---

## DECISION AND ORDER

---

Raymond Dahms seeks judicial review of the final decision of the Commissioner of the Social Security Administration denying his claim for a period of disability and disability insurance benefits under the Social Security Act, 42 U.S.C. § 405(g). For the reasons below, the Commissioner's decision will be reversed and the case remanded for further proceedings consistent with this decision pursuant to 42 U.S.C. § 405(g), sentence four.

## BACKGROUND

On June 20, 2018, Dahms filed an application for a period of disability and disability insurance benefits alleging disability beginning on March 4, 2018 due to bipolar disorder, anxiety disorder, and insomnia. (Tr. 246.) Dahms' application was denied initially and upon reconsideration. (Tr. 33.) Dahms filed a request for a hearing, and a hearing was held before an Administrative Law Judge ("ALJ") on October 10, 2019. (Tr. 48–96.) Dahms testified at the hearing, as did Spencer L. Mosley, a vocational expert. (Tr. 33.)

---

[1] The court has changed the caption to reflect Kilolo Kijakazi's recent appointment as acting commissioner.

In a written decision issued November 6, 2019, the ALJ found that Dahms had the severe impairments of depression and anxiety disorder with panic attacks. (Tr. 35.) The ALJ found that Dahms did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. pt. 404, subpt. P, app. 1 (the "Listings"). (Tr. 36–37.) The ALJ further found that Dahms had the residual functional capacity ("RFC") to perform work at all exertional levels, with the following non-exertional limitations: limited to jobs defined as unskilled; limited to jobs involving simple and routine job tasks and instructions; limited to jobs having only occasional decision-making and changes in the work setting; limited to jobs having only occasional interaction with co-workers and supervisors and no interaction with the public; and limited to jobs not involving fast-paced production. (Tr. 37.)

While the ALJ found that Dahms could not perform his past relevant work, he found that given Dahms' age, education, work experience, and RFC, other jobs existed in significant numbers in the national economy that he could perform. (Tr. 41–43.) As such, the ALJ found that Dahms was not disabled from March 4, 2018, through the date of the decision. (Tr. 43.) The ALJ's decision became the Commissioner's final decision when the Appeals Council denied Dahms' request for review. (Tr. 1–7.)

## DISCUSSION

### 1. *Applicable Legal Standards*

The Commissioner's final decision will be upheld if the ALJ applied the correct legal standards and supported his decision with substantial evidence. 42 U.S.C. § 405(g); 42 U.S.C. § 405(g); *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011). Substantial evidence is not conclusive evidence; it is "such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion." *Schaaf v. Astrue*, 602 F.3d 869, 874 (7th Cir. 2010) (internal quotation and citation omitted). Although a decision denying benefits need not discuss every piece of evidence, remand is appropriate when an ALJ fails to provide adequate support for the conclusions drawn. *Jelinek*, 662 F.3d at 811. The ALJ must provide a "logical bridge" between the evidence and conclusions. *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000).

The ALJ is also expected to follow the SSA's rulings and regulations in making a determination. Failure to do so, unless the error is harmless, requires reversal. *Prochaska v. Barnhart*, 454 F.3d 731, 736–37 (7th Cir. 2006). In reviewing the entire record, the court does not substitute its judgment for that of the Commissioner by reconsidering facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). Finally, judicial review is limited to the rationales offered by the ALJ. *Shauger v. Astrue*, 675 F.3d 690, 697 (7th Cir. 2012) (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 93–95 (1943); *Campbell v. Astrue*, 627 F.3d 299, 307 (7th Cir. 2010)).

### 2. Application to This Case

#### 2.1 Dahms' Relevant Medical History

Dahms, 32 years old on his alleged onset date, has struggled with symptoms of persistent depression since he was 15 years old. (Tr. 373.) Dahms also struggled with alcohol addiction from a young age, receiving his first operating while intoxicated ("OWI") charge in 2003 and an additional OWI charge in 2006 (Tr. 97). After receiving a third OWI in March 2018 (*id.*), being fired from a job for coming to work drunk (Tr. 358), receiving a disorderly conduct charge in 2017 for behaving loud and disruptive while drunk, and receiving an ultimatum from his parents to address his alcohol problem or be kicked out of the house (*id.*), Dahms sought treatment for his alcohol addiction (*id.*).

Upon entering treatment for his alcohol addiction in March 2018, Dahms and his treatment providers surmised that Dahms was using alcohol to cope with several undiagnosed mental health conditions, including anxiety and depression. (Tr. 358.) Dahms immediately began treating with several mental health providers: Dr. Robert Ruskiewicz, a psychiatrist who provided Dahms with management of his mental health medications (Tr. 353); Brian Groeschel, a therapist (356–57); and several providers at the United Community Center for alcohol and other drug abuse ("AODA") counseling (Tr. 371). While Dahms was discharged from AODA treatment in late June 2018 after achieving his goals (Tr. 387) and continued to maintain his sobriety throughout the relevant time period thereafter (*see, e.g.*, Tr. 83, 337–39, 514, 537); Dahms testified that his depression and anxiety became much worse after he stopped drinking (Tr. 83–84).

During the relevant time period from March 2, 2018 through November 6, 2019—a time period spanning approximately 87 weeks—Dahms treated with at least one of his mental health providers approximately 70 times. Dr. Ruskiewicz diagnosed Dahms with major depression, an anxiety disorder, and a substance abuse disorder, and started him on citalopram (an anti-depressant). (Tr. 353.) Dahms' medical records throughout the course of the relevant time paint a picture of someone continually struggling with depression and anxiety, despite experiencing some improvement with a great deal of treatment, including medication and therapy. For example, in August 2018, Dr. Ruskiewicz noted that while Dahms continued to gradually improve from a more severe set of symptoms of major depression, he continued to report social withdrawal, lack of energy and enjoyment of life, reduced concentration, sleep problems, and anxiety. (Tr. 336.) In October 2018, Dr. Ruskiewicz noted that while Dahms' medications had been helpful and he was taking some

4

small steps towards completing more daily tasks, "[s]ome sort of interference still persists from an either chronic or partially-treated depression . . . affecting his overall lifestyle which seems still somewhat constricted." (Tr. 408.) Dr. Ruskiewicz urged him to continue his individual behaviorally-orientated psychotherapy to address these issues. (*Id.*) Dahms' mother told consultative examiner Dr. Julia Caldwell on October 17, 2018 that Dahms needed to take anxiety medication before walking his dog, going to the grocery store, or making a phone call. (Tr. 395.)

The next month, Dr. Ruskiewicz noted that Dahms' symptoms of depression and anxiety continued to linger and prevented him from returning to full-time work. (Tr. 405.) By December 2018, Dr. Ruskiewicz stated that while Dahms had experienced improvement over the past nine months, "there is residual depression which has left him with problems such as a lack of energy and activity, lack of enjoyment in usual activities, and weight gain." (Tr. 402.) Dr. Ruskiewicz noted that there "seems to be something missing towards a full recovery." (*Id.*) Dr. Ruskiewicz considered altering Dahms' medications and advised him to continue his therapy. (*Id.*)

In early 2019, Dahms struggled with his mental impairments as he anticipated his sentencing for his March 2018 OWI. (Tr. 514.) In February 2019, Dahms was sentenced to six months of house arrest, with leave to continue his medical treatment. (Tr. 505, 636.) After the uncertainty of his sentence ended, Dahms experienced some improvement in mood and coping skills (Tr. 505, 624, 628, 630, 634), leading his therapist to state in March 2019 that Dahms appeared to be on the "right road to recovery, as evidence by his improved mood and coping" (Tr. 624). By the next month, however, Groeschel noted that Dahms continued to deal with negative self-talk (Tr. 622) and major depression, as evidence by his depressed mood

(Tr. 618). He noted that Dahms planned to discuss changing his medication at his next appointment with Dr. Ruskiewicz. (*Id.*)

At this next appointment on April 11, 2019, Dr. Ruskiewicz noted that Dahms expressed a sense of pessimism about his future, as well as a lack of motivation and energy. (Tr. 498.) He noted that while Dahms' depression improved, Dahms was likely suffering from a chronic depression that was slow to respond to treatment, which might be helped by cognitive behavioral therapy or more intensive outpatient treatment. (*Id.*) Throughout the remainder of April, Dahms cycled between periods of improved mood and coping and periods of depression and poor coping. (Tr. 612, 616.)

In May 2019, both Dr. Ruskiewicz and therapist Groeschel noted that Dahms was struggling with increased depression and self-isolation. (Tr. 492, 610.) Dr. Ruskiewicz stated that Dahms was presenting with a similar set of symptoms as he did for the past year, opining that:

> There is the chronic depressive component which features lack of energy, lack of enjoyment in usual activities, diminished mental concentration ability, and maybe even a pattern of social avoidance or withdrawal . . . I reviewed some of my concerns regarding his future in terms of recovery and meeting long-term goals. I suspect that it would be difficult for him to return to productive work within the current calendar year, but nevertheless I would still want to make that a goal of ours in the long term so that he does not in his pessimism or bitterness about events give up on the possibility of returning to work or school, which I think he could be capable of at some point. The patient continues to work in individual psychotherapy and he remains on his medications which have had partial effectiveness. I think they have treated a major depressive component. He is still left with a dysthymic mood component.

(Tr. 492.) Throughout the remainder of the relevant time period, Dahms' anxiety-related symptoms increased. He testified that while on house arrest, he was able to engage in heavy isolation, whereas without his ankle bracelet, he no longer had an excuse for staying at home. (Tr. 69.) Groeschel recorded that in June 2019, Dahms was able to "knock off" four days of

his sentence by working in trash removal over the weekend. (Tr. 598.) However, Dahms reported experiencing extreme anxiety over leaving the house. (*Id.*) Several days later, Dr. Ruskiewicz similarly noted that Dahms' "biggest complaint" was panic-like anxiety and agoraphobic avoidance and that Dahms had limited his radius of travel away from home, despite attending his medical appointments unassisted. (Tr. 484.) Dahms also reported to Dr. Ruskiewicz that the work assignment the previous weekend created undue anxiety during the course of the work, despite the assignment not being located in a crowded venue or threatening location. (*Id.*) Dahms' anxiety continued to increase, with Dr. Ruskiewicz stating in early July 2019 that while Dahms' depression had improved, he had "crippling anxiety which could be described as agoraphobic, which is keeping him restricted as far as activity." (Tr. 481.) Similarly, in August, Dr. Ruskiewicz noted that Dahms had a "pattern of behavior which is quite limited in terms of social interaction or activity outside his home compared to how he has handled things in the past . . . [h]is lifestyle is much more limited." (Tr. 100.) Groeschel also noted in August that Dahms was "lethargic and super depressed" and it was taking him extra effort to take his dog for a walk. (Tr. 576.)

A change in Dahms' insured status prevented him from continuing to treat with Dr. Ruskiewicz (Tr. 656) and an appointment with a new provider, Dr. Stuart Sheets, ended with Dahms being asked to leave the office for acting, "hostile, sarcastic, and flaring" at Dr. Sheets. (*Id.*) The remaining treatment in the record with Groeschel indicates increased anxiety and low motivation (Tr. 562–68) and a treatment record from a new psychiatrist, Dr. Olugbenga Aje, indicates that while Dahms' depression improved, his anxiety worsened (Tr. 97). Dahms reported poor sleep, low appetite, chest tightness, shortness of breath, and heart palpitations.

7

Case 2:20-cv-01052-NJ    Filed 09/16/21    Page 7 of 11    Document 19

(*Id.*) Upon mental status examination, Dahms' mood was reported as anxious and depressed. (Tr. 98.)

### 2.2 Alleged Errors in the ALJ's Decision

Dahms alleges the ALJ committed multiple errors in finding him not disabled. First, he argues that the ALJ failed to adequately account for his limitations in social and variable functioning in the RFC. (Pl.'s Br., Docket # 13 at 5–10.) Dahms further alleges the ALJ improperly weighed the opinions of his two treating providers, Dr. Ruskiewicz and therapist Groeschel. (*Id.* at 10–13.) Finally, Dahms argues the ALJ improperly discounted his subjective symptoms (*id.* at 13–16) and improperly rejected Dr. Caldwell's opinion that Dahms had marked limitations in his ability to withstand routine work stress and adapt to change (*id.* at 16–17).

As an initial matter, although Dahms argues the ALJ made multiple errors in assessing his disability claim, this is not a case where the ALJ missed large swaths of record evidence. On the contrary, the ALJ seems to understand and grapple with the fact that Dahms continued to experience significant symptoms from his anxiety and depression. For example, in according Dahms greater limitations than those opined by the two State agency consultants, the ALJ noted that while "some treatment notes have indicated that [ ] there has been some progress with the claimant's depression, there are still residuals and symptoms of crippling anxiety which have kept him restricted as far as activity." (Tr. 40.) The ALJ cites Dahms' testimony that he needs to "really work himself up" to leave the house and that he continues to struggle despite therapy and medication. (Tr. 38.)

Where the ALJ's decision misses the mark, however, is with his rejection of Dahms' treating providers' opinions regarding his absenteeism and time off-task. Dr. Ruskiewicz

8

Case 2:20-cv-01052-NJ   Filed 09/16/21   Page 8 of 11   Document 19

opined that Dahms had marked limitations in sustaining regular work attendance (Tr. 437) and Groeschel opined that Dahms had marked limitations in working a full day without needing more than the allotted number or length of rest periods (Tr. 443). Both providers opined that Dahms would miss at least four days of work per month due to his treatment or symptoms. (Tr. 435, 441.) The State agency consultants similarly opined at both the initial and reconsideration level that Dahms had moderate limitations in concentration, persistence, or pace (Tr. 107, 121), specifically opining moderate limitations in the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances and completing a normal workday and workweek without interruptions from psychologically based symptoms (Tr. 110, 124).

In finding Dahms had moderate limitations with regard to concentration, persistence, or pace (Tr. 36), the ALJ appears to credit Dr. Ruskiewicz's and Groeschel's opinions regarding Dahms' difficulty sustaining regular attendance at work and working a full day without needing more than the allotted number and length of rest periods. (Tr. 37, citing 7F and 8F.) And while the ALJ found the opinions of the State agency consultants only partially persuasive, he rejected the portion of the opinions where the consultants opined only mild limitations in interacting with others, finding the record supported greater limitations. (Tr. 40.)

Thus, while the ALJ seems to credit the opinions of both Dahms' treating providers and the State agency consultants regarding impairments in absenteeism and staying on-task, he provides no limitations for it in the RFC. The ALJ is clearly aware of these issues, questioning the VE regarding employer tolerances for both limitations. (Tr. 91–92.) The VE testified that an employer would not tolerate two additional unscheduled 15-minute breaks

9

during a workday and would not tolerate missing more than one day a month on an ongoing basis. (*Id.*) And while perhaps the ALJ rejected the treating providers' opinions that Dahms would miss four days per month due to his impairments, the ALJ is completely silent as to how he accounted for the fact that he *did* credit Dahms' moderate limitations in maintaining attendance and punctuality and working a full day without needing more than the allowed rest periods. This was error requiring remand. *See DeCamp v. Berryhill*, 916 F.3d 671 (7th Cir. 2019). Given Dahms' case is being remanded on this basis, I will not address his remaining arguments for remand.

## CONCLUSION

Dahms seeks reversal and remand of this case on several alleged grounds of error. I agree the ALJ erred in formulating Dahms' RFC to properly include restrictions for his moderate limitations in concentration and persistence. Thus, remand is required.

Dahms asks for reversal and an award of benefits (Docket # 13 at 18), but that remedy is appropriate only if all factual issues involved in the entitlement determination have been resolved and the resulting record supports but one conclusion—that the claimant qualifies for disability benefits. *Allord v. Astrue*, 631 F.3d 411, 415 (7th Cir. 2011). As discussed above, there are unresolved issues the ALJ must sort out on remand. For these reasons, the Commissioner's decision is reversed and the case will be remanded for further proceedings consistent with this decision.

## ORDER

**NOW, THEREFORE, IT IS ORDERED** that the Commissioner's decision is **REVERSED**, and the case is **REMANDED** for further proceedings consistent with this decision pursuant to 42 U.S.C. § 405(g), sentence four.

10

**IT IS FURTHER ORDERED** that this action is **DISMISSED**. The Clerk of Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 16th day of September, 2021.

BY THE COURT

_____
NANCY JOSEPH
United States Magistrate Judge

11

Case 2:20-cv-01052-NJ   Filed 09/16/21   Page 11 of 11   Document 19